IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> WALGREEN CO. *et al.*, <br><br> Defendants. | No. 14-cv-01558 <br><br> Judge John F. Kness |

**MEMORANDUM OPINION AND ORDER**

Relators-Plaintiffs Sarah Castillo Baier and Rita Svendsen Baier sued Defendants Walgreen Co. and James G. Kulekowskis in this *qui tam* action alleging violations of the federal and Illinois False Claims Acts. The United States Government and the State of Illinois jointly intervened, bringing claims against Walgreen Co., Kulekowskis, and Christopher G. Hayes. The Court[1] previously issued an opinion dismissing Relators' Second Amended Complaint (SAC) and the United States Government's Joint Complaint in Intervention (JCI). Relators timely filed a Third Amended Complaint (TAC), and the State[2] timely filed an Amended Joint

---

[1] The case was originally assigned to Judge John Blakey but was later transferred to the calendar of the undersigned.

[2] Although the United States Government filed the Second Amended Joint Complaint in Intervention, it has since withdrawn from intervention. (Dkt. 122.) The United States represented that "[t]he relators and the State of Illinois will continue this action." (*Id.* at 1.) Because the State of Illinois continues litigating this case, the Court refers to the SAJCI as a pleading from "the State" throughout this opinion.

Complaint in Intervention and then a superseding Second Amended Joint Complaint in Intervention (SAJCI). Defendants now move to dismiss Relators' TAC and the State's SAJCI. For the reasons that follow, Defendants' motion to dismiss the State's SAJCI is granted, and Defendant's motion to dismiss Relator's TAC is denied.

## I. BACKGROUND

As the Court explained in greater detail in its earlier dismissal order (Dkt. 82), Relators, acting on behalf of the United States Government and the State of Illinois, allege that Defendants unlawfully engaged in a "systematic and routine waiver of patient copayments." (Dkt. 91 ¶ 1.) Relators contend that Defendants did so to induce all patients at the Cook County Health and Hospital Systems CORE center to fill prescriptions at a specialty pharmacy called Walgreens C&M. (*Id.* ¶ 86.) According to Relators, "[s]uch inducements constitute kickbacks" (*id.* ¶ 3) and violate the False Claims Act (FCA), 31 U.S.C. § 3729. The State intervened and premised FCA liability on Defendants' allegedly improper prescription auto-refill policy, under which Defendants made implicitly false representations that they complied with Illinois Medicaid requirements. (Dkt. 115 at 1–2.)

All four Counts in Relators' TAC maintain the same legal theories as did the Counts of the SAC. Counts I and II of Relators' TAC allege that Defendants violated the False Claims Act (FCA), 31 U.S.C. § 3729(a)(1)(A)–(B), based on violations of the Anti-Kickback Statute (AKS), 42 U.S.C. § 1320a-7b. (Dkt. 91 ¶¶ 293–313.) Counts III and IV of Relators' TAC allege that Defendants scheme also violated the Illinois False Claims Act (IFCA), 740 ILCS § 175/3(a)(1)(A)–(B), based on violations of the Illinois

2

Public Assistance Fraud Statute (IPAFS), 305 ILCS 5/8A-3. (*Id.* ¶¶ 314–32.)

The Counts of the State's SAJCI likewise are premised on the same legal theories as the Counts of the JCI. Counts I and II of the State's SAJCI allege that Defendants violated the FCA by submitting reimbursement claims from the automatically-refilled prescriptions. (Dkt. 115 ¶¶ 194–99.) Counts III and IV of the State's SAJCI allege that Defendants violated the IFCA by the same conduct. (*Id.* ¶¶ 200–05.) The State also brings claims of common law fraud (Count V) and unjust enrichment (Count VI) against Defendants, as well as a claim of payment by mistake (Count VII) against Defendant Walgreen Co. (*Id.* ¶¶ 206–13.)

Although Relators and the State have not changed their theories of liability as compared to the earlier dismissed pleadings (*see* Dkt. 82), Relators and the State have made several additions to their amended pleadings.[3] For instance, Relators include several new introductory paragraphs to provide greater context to their allegations. (Dkt. 91 ¶¶ 4, 6, 8–10, 12–13, 18, 19.) They describe more thoroughly how one of the Relators, Sarah Castillo Baier, first learned of Defendants' alleged copayment waivers. (*Id.* ¶¶ 96–97, 99, 102.) Relators also provide new allegations describing the patient intake process to describe "how patients were placed in particular billing groups, including the Core Center – Do Not Send billing group." (*Id.* ¶ 117; *see also id.* ¶¶ 118–37.) Relators also include more detailed allegations concerning how Defendants waived copayments. (*Id.* ¶¶ 138, 140–48, 151, 153–54; *see also id.* ¶¶ 236–

---

[3] The Court refrains from quoting specific additions alleged in the present pleadings compared to earlier iterations. Instead, the Court summarizes the additional paragraphs to provide general background and will refer later to particular allegations, when appropriate, in the Discussion section of this Opinion analyzing the pleadings' sufficiency. *See* Part III.

3

47.) Drawing from Castillo Baier's training and experience, they add details about Patient 5698, listing certain drugs in the Statement of Account but noting that Patient 5698 made no copayments when not exempt from copayments. (*Id.* ¶¶ 157–201.) Relators also expand on their description of Defendants' alleged tactics to advertise these wrongful copayment waivers. (*Id.* ¶¶ 202–209, 211, 215, 217.)

Although their SAC only included Exhibit A as evidence of their allegations, Relators' TAC includes Exhibits A through G to provide financial records from 2013 and 2014 showing Defendants wrongfully waiving copayments. (Dkt. 91-1; Dkt. 91-2; Dkt. 91-3; Dkt. 91-4; Dkt. 91-5; Dkt. 91-6; Dkt. 91-7.) For its part, the State has included new material in its SAJCI. For example, the State added details about how the policy of the Illinois Department of Healthcare and Family Services to prohibit automatic prescription refills was material to the payment of a claim for a refilled prescription and that Defendants did not qualify for the limited exceptions. (Dkt. 115 ¶¶ 42–43, 46.) The State has also described more thoroughly how every Walgreen Co. store except C&M used a computer system called Intercom Plus; C&M used a system called CarePoint. (*Id.* ¶¶ 49–51.) The State explains that the stores using Intercom Plus—that is, every store except C&M—complied with the auto-refill prohibition. (*Id.* ¶ 50.) But the CarePoint system used by C&M, the State alleges, was not connected to Walgreen Corporate; this disconnect allegedly allowed the auto-refill scheme to continue, deliberately unmonitored by Walgreen Co.'s leadership. (*Id.* ¶¶ 51–53.)

In the SAJCI, the State also elaborates on how Castillo Baier's supervisors

4

directed her to implement disclosure notes on the CarePoint system,[4] which the State alleges were false, to set up the automatic refills. (*Id.* ¶¶ 60–67.) Also newly introduced in the SAJCI is more information about the email Defendants sent in preparation for the employee meeting called on November 14, 2014, and about the meeting itself, where Defendants allegedly coordinated their employees to tell the same lies when answering the State's subpoena. (*Id.* ¶¶ 87–100.) Although unspecified in the JCI, the SAJCI proceeds under an implied false certification theory (*id.* at 27) and distinguishes between legitimate disclosure notes, disclosure notes documenting no authorization was obtained, generic disclosure notes, and blank disclosure notes. (*Id.* ¶¶ 107–21.) The SAJCI also includes more examples of Defendants' scheme to refill prescriptions automatically, providing information relating to Patients A through E, as compared to the JCI's data concerning only Patient A. (*Id.* ¶¶ 122–74.) Finally, the State adds more details concerning Patient F as an example of Defendants not seeking authorization from their patients or providers before sending the automatically refilled prescriptions from C&M to the CORE Center patients. (*Id.* ¶¶ 182, 184–93.)

But for purposes of a motion to dismiss, increased pleading heft does not necessarily equate to a finding of plausibility. The Court previously dismissed Counts I through IV of the State's JCI, holding that the State's theory of fraud was inherently flawed because checking the D3 box was not a false statement, and, even if it were a

---

[4] The State also represents that Candice Bundzinski, another pharmacy technician at C&M, received direction from her supervisors to submit false disclosure notes. (Dkt. 115 ¶¶ 67–73.)

5

false statement, the State failed to plead its allegations with sufficient particularity under Rule 9(b). (Dkt. 82 at 28–50.) Counts V through VII were also dismissed: the Court dismissed Count V on the merits and then declined to exercise supplemental jurisdiction over Counts VI and VII, which were pendent claims sounding in Illinois law. (*Id.* at 50–51.) The Court also dismissed all four counts of Relators' SAC because Relators failed to plead its allegations with sufficient particularity under Rule 9(b). (*Id.* at 52–64.)

At issue now is whether the additions to Relators' TAC and the State's SAJCI—which purport to ameliorate their earlier-identified deficiencies—are sufficient to shield the pleadings from Defendants' renewed motions to dismiss. For the reasons that follow, the Court holds that Relators' TAC sufficiently alleges a claim under the FCA. But the State's SAJCI, while similarly adding more information than its JCI had provided, still does not allege a proper FCA claim. Accordingly, Defendants' motion to dismiss the State's SAJCI is granted, and Defendant's motion to dismiss Relator's TAC is denied.

## II.  LEGAL STANDARD

A motion under Rule 12(b)(6) "challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Ord. of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Each complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). These allegations "must be enough to raise a

6

right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Put another way, the complaint must present a "short, plain, and plausible factual narrative that conveys a story that holds together." *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 777 (7th Cir. 2022) (cleaned up). In evaluating a motion to dismiss, the Court must accept as true the complaint's factual allegations and draw reasonable inferences in the plaintiff's favor. *Iqbal*, 556 U.S. at 678. But even though factual allegations are entitled to the assumption of truth, mere legal conclusions are not. *Id.* at 678–79.

Because the FCA serves as an anti-fraud statute, "claims under it are subject to the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure." *United States ex rel. Gross v. AIDS Research All.-Chi.*, 415 F.3d 601, 604 (7th Cir. 2005). Mere plausibility is insufficient for a fraud claim to survive a motion to dismiss; rather, Rule 9(b) requires a plaintiff to "state with *particularity* the circumstances constituting fraud." Fed. R. Civ. P. 9(b) (emphasis added). It is insufficient for a plaintiff to plead mere conclusory allegations of fraud. *See United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016) (plaintiffs must "use some . . . means of injecting precision and some measure of substantiation into their allegations of fraud") (quotation omitted).

A plaintiff alleging fraud must therefore "do more pre-complaint investigation to assure that the claim is responsible and supported 'rather than defamatory and extortionate.'" *Payton v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 184 F.3d 623, 627 (7th Cir. 1999) (quoting *Ackerman v. Northwestern Mutual Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999)); *see also Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732,

7

738 (7th Cir. 2014). If a plaintiff bases a fraud claim on information and belief, he must also plead the "grounds for his suspicion" to meet 9(b)'s threshold. *Pirello Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 443 (7th Cir. 2021) (quoting *Uni*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 924 (7th Cir. 1992)). In sum, a complaint alleging fraud must provide all of the information in the first paragraph of any newspaper story: "the who, what, when, where, and how." *Gross v*, 415 F.3d at 605 (quoting *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 376 (7th Cir. 2003)).

## III. DISCUSSION

### A. FCA and IFCA Standard

Relators and the State both bring FCA claims under 31 U.S.C. § 3729(a)(1)(A) and § 3729(a)(1)(B), as well as their parallel IFCA counterparts, 740 ILCS §§ 175/3(a)(1)(A)–(B). (Dkt. 91 ¶¶ 293–332; Dkt. 115 ¶¶ 194–205.) To state a claim under the FCA, Relators and the State both must show that Defendants "knowingly present[ed], or cause[d] to be presented, a false or fraudulent claim for payment or approval," 31 U.S.C. § 3729(a)(1)(A), or "knowingly ma[de], use[d], or cause[d] to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. § 3729(a)(1)(B).

As the Supreme Court has explained, a "claim" under the FCA "includes direct requests to the State for payment as well as reimbursement requests made to the recipients of federal funds under federal benefit programs." *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 182 (2016) (*Escobar*). Both the

8

scienter and materiality requirements under the FCA are, as the Supreme Court has characterized them, "rigorous." *Id.* at 192. Under the FCA, the terms "knowing" and "knowingly"

> (A) mean that a person, with respect to information—
>
>> (i) has actual knowledge of the information;
>>
>> (ii) acts in deliberate ignorance of the truth or falsity of the information; or
>>
>> (iii) acts in reckless disregard of the truth or falsity of the information; and
>
> (B) require no proof of specific intent to defraud.

31 U.S.C. 3729(b)(1)(A)–(B). "Material" under the FCA means "having a natural tendency to influence, or be capable of influencing, the payment or receipt of money or property." 31 U.S.C. § 3729(b)(4). As the Supreme Court has also clarified, a "misrepresentation about compliance with a statutory, regulatory, or contractual requirement must be material to the State's payment decision in order to be actionable" under the FCA. *Escobar*, 579 U.S. at 181.

As for the parallel Illinois antifraud statute, courts must evaluate IFCA claims under the same standards as those applicable to FCA claims. *See, e.g.*, *United States ex rel. Grenadyor v. Ukrainian Vill. Pharmacy, Inc.*, 772 F.3d 1102, 1109 (7th Cir. 2014); *Cunliffe v. Wright*, 51 F. Supp. 3d 721, 740 (N.D. Ill. 2014). Rule 9(b)'s heightened pleading standard applies equally to both antifraud statutes. *United States v. Heritage Operations Grp., LLC*, 622 F. Supp. 3d 679, 693 (N.D. Ill. 2022).

9

Although Relators' SAC and the State's JCI did not specify whether their FCA claims rested on an express or implied false certification theory of FCA liability, both Relators' TAC and the State's SAJCI clarify that they proceed under an implied false certification theory. (Dkt. 91 ¶ 300; Dkt. 115 at 27.) Implied false certification, addressed in *Escobar*, concerns "the submission of claims that omit material information about regulatory non-compliance." *United States ex rel. Lisitza v. Par Pharm. Cos.*, 276 F. Supp. 3d 779, 782 (N.D. Ill. 2017) (*Lisitza*) (citing *Escobar*, 579 U.S. at 186–88). In other words, under an implied false certification theory, the falsity alleged under the FCA results from "misrepresentations by omission," contrasted with an express false certification theory where the alleged falsity results from "express misrepresentations." *Id.* at 789.

An FCA theory based on implied false certification must satisfy two conditions: first, "the claim does not merely request payment, but also makes specific representations about the goods or services provided," and second, "the defendant's failure to disclose noncompliance with material statutory, regulatory, or contractual requirements makes those representations misleading half-truths." *United States v. Sanford-Brown, Ltd.*, 840 F.3d 445, 447 (7th Cir. 2016) (citing *Escobar*, 579 U.S. at 190–91).

### A. Counts I through IV of Relators' TAC

Relators premise their theory of FCA liability differently than the State does. Although the State focuses on Defendants' alleged auto-refill policy (*see* Dkt. 97 ¶ 1), Relators allege that Defendants improperly and routinely waived copayments (*see*

Dkt. 91 ¶ 1). Doing so, the Relators argue, violates the Anti-Kickback Statute and, by extension, the FCA. (*Id.*) Defendants move to dismiss Relator's TAC and contend that Relators fail to allege with sufficient particularity that Defendants actually waived any copayments; Defendants also argue that even if Relators did sufficiently allege such waivers, Relators failed to adequately allege their impropriety. (Dkt. 104 at 7, 10.) For Relators to defeat the motion to dismiss, then, the TAC must allege with sufficient particularity both that Defendants waived copayments and that they did so improperly.

Because it failed to allege improper copayment waivers with sufficient particularity under Rule 9(b), the Court previously dismissed the Relator's SAC. (Dkt. 82 at 56–57.) In so holding, the Court first held that the Relators failed to allege sufficiently even one copayment waiver with sufficient particularity. (*Id.* at 56.) The SAC provided Patient 5698's billing record in its attempt to show copayment waivers. Although the SAC set forth several line items labeled "Patient Responsibility" and others indicating "write offs" for "bad debt" (Dkt. 65-3), that record was insufficient to allege any copayment waiver with particularity because Relators failed to allege adequately that "patient responsibilities" meant copayments. (Dkt. 82 at 56.)

And as explained further in the Court's earlier order, even had Relators appropriately identified such waivers, Relators failed to sufficiently allege their impropriety. (*Id.*) Pharmacies can waive copayments so long as the waiver is neither advertised nor routine and the pharmacy either determined in good faith the financial need of the recipient or failed to collect the copayment after making reasonable

11

collection efforts. *See* 42 U.S.C. §§ 1320a-7a(i)(6)(A). Relators failed to allege that the waivers were routine, part of a broader advertisement effort, or made without any good faith determination of the patient's financial need. (Dkt. 82 at 57.) Accordingly, the Court dismissed the SAC.

Relators' TAC cures those earlier shortcomings. For example, a billing statement for Patient 5698, attached to the TAC as Exhibit C, notes numerous "Responsibilities" attributable to "Patient"; it also shows entries labeled "WRITE OFF" for "bad debt." (Dkt. 91-3.) Although the SAC failed to explain in any meaningful way that patient responsibilities meant copayments, the TAC sufficiently does so. Relator Castillo Baier alleges, based on her training and on her experience in the C&M finance department, that Patient 5698's patient responsibilities were copayments, that the bad debt write-offs were the work of C&M employees such as herself waiving those copayments at Defendants' direction, and that Patient 5698 should have been required to make copayments. (Dkt. 92 at ¶¶ 140, 143, 150–51.)

Relators also sufficiently allege that these copayment waivers were improper by showing that they were routine. Castillo Baier alleges that she was instructed and trained to, and did, place every CORE Center patient who was covered by Illinois Medicaid into the "Core Center – Do Not Bill" group. (*Id.* at 126.) And Exhibits D and E of the TAC show that CORE Center patients were "billed" (as Relators adequately explain, this means "responsible for," not "sent a bill for") several thousand dollars, but C&M received no payments attributable to any CORE Center patient during 2013

12

and 2014. (*Id.* at ¶¶ 142–47.)[5]

Relators' TAC alleges with sufficient particularity that Defendants improperly waived copayments. Perhaps Defendants' arguments to the contrary can be renewed at the summary judgment stage in the light of relevant evidence, but, at this stage of litigation, Relators have sufficiently pleaded their allegation of Defendant's violation of the FCA. Defendants' motion to dismiss Relator's TAC is accordingly denied.

### B. Counts I through IV of the State's SAJCI

Defendants also move to dismiss Counts I through IV of the State's SAJCI on two grounds: first, Defendants argue that the SAJCI premises its FCA violation on a flawed legal theory; and second, Defendants argue that the SAJCI is not pleaded with adequate particularity under Rule 9(b).

Defendants are correct: the SAJCI relies on the same flawed theory of FCA liability as did the JCI. Counts I through IV of the SAJCI must therefore be dismissed. This holding, as well as Defendant's particularity arguments, are addressed in turn below.

#### a. Flawed Legal Theory

In the SAJCI, the State maintains the same theory of fraud as that alleged in its JCI. In particular, the State argues that Defendants' filling-in of Box D3 was a material misrepresentation that violated the FCA. (*See, e.g.*, Dkt. 97 ¶¶ 129–32.) In its opinion dismissing the JCI, the Court dismissed that theory as insufficient to

---

[5] For similar reasons, Relators also allege with sufficient particularity the routine waiver of copayments for patients placed in the general "Do Not Send" billing group. (*See* Dkt. 91 at 60–63.)

13

support an FCA claim because checking Box D3 is not a false claim. (Dkt. 82 at 32–33.) Because the State's argument has not changed, the Court's previous holding remains in place, and Counts I through IV of the State's SAJCI are therefore dismissed for failure to state a claim under the FCA (and by extension the IFCA).

      b.      *9(b) particularity*

Defendants also argue that the State's SAJCI should also be dismissed for failure to meet the heightened pleading standards of Rule 9(b). (Dkt. 112 at 12.) Defendants contend that the State fails to meet Rule 9(b)'s requirements because its pleading is insufficient in four areas: submission of the false claims, the "reverse and credit" theory, improper group pleading, and establishment of Walgreen Co.'s scienter. (Dkt. 112 at 12–18.) As explained below, the SAJCI adequately pleads the first three areas but fails to establish with requisite particularity Defendant Walgreen Co.'s scienter.

      i.      Submission of false claims

Defendants first argue that the actual submission of the alleged false claims is not pleaded with adequate particularity. (*Id.*) Defendants point to the earlier dismissal order, which held that the State's pleading regarding Defendants Kulekowskis and Hayes's participation in the alleged fraudulent plot was deficient because it was conclusory. (Dkt. 82 at 46). Now that the SAJCI has added several new paragraphs, it sufficiently addresses that deficiency.

As the Court outlined in its earlier dismissal order, the JCI alleged that Kulekowskis and Hayes instructed C&M staff to report that refills had been

14

requested by either a patient or a provider. But the JCI then jumped to the conclusion that these instructions were evidence of a fraudulent effort to circumvent the newly-established auto-refill policy. As the Court explained, such pleading "indicates only that in response to the subpoena, Kulekowskis and Hayes forcefully reminded employees to follow proper policies and procedures." (Dkt. 82 at 46.)

In response, the SAJCI newly alleges that, at the meeting in which Kulekowskis and Hayes instructed employees to document refill requests, both Kulekowskis and Hayes made statements that suggest the existence of fraud. For example, the SAJCI alleges that Kulekowskis told attendees they had to annotate a refill request even though contact with the patients was not necessary. (Dkt. 97 at 26.) And the SAJCI alleges that Hayes explained that "everyone needed to comply . . . in order to avoid [] layoffs." (*Id.*)

These allegations, taken as true as the Court must, bridge the gap previously missing in the JCI between Kulekowskis and Hayes's direction to C&M staff and the alleged fraud.

### ii. "Reverse and Credit" theory

Defendants next argue that the State fails adequately to plead what the Defendants characterize as a standalone "reverse and credit" theory of fraud. (Dkt. 112 at 14.) In its earlier order, the Court characterized the State's reverse and credit allegations as a standalone theory. (Dkt. 82 at 47.) But the SAJCI adds sufficient context to the reverse and credit allegations so as to establish it, not as a standalone theory, but rather as specific information supporting the auto-refill theory of fraud.

15

In particular, the SAJCI links with sufficient particularity C&M's failure to reverse and credit the money the state of Illinois paid for Patient F's six months' worth of prescriptions with the fraudulent scheme: allegedly, the prescriptions were refilled against Medicare policy because, as the State alleges, neither the patient nor the patient's doctor requested or authorized the refills. (Dkt. 97 ¶¶ 184–89.)

### iii. Group Pleading

Defendants also contend that the State engaged in impermissible group pleading under Rule 9(b)—that is, the SAJCI is insufficiently precise to put individual defendants on notice of the specific conduct for which they may be liable. (*Id.* at 16.) But the SAJCI includes numerous allegations of specific actions by identifiable Defendants. (*See, e.g.*, *id.* at ¶¶61–63, 93–94, 167.) Although the State highlights the several times Defendants refer to "Defendants" as a collective, this Court is unaware of a rule precluding any use of collective references. Because it sets forth with sufficient particularity the alleged wrongful conduct of the individual Defendants, the SAJCI meets the requirements of Rule 9(b).

### iv. Walgreen Co.'s scienter

As to Defendants' state of mind, the SAJCI alleges that Walgreen Co. was recklessly indifferent to Defendants Kulekowskis and Hayes's scheme because (1) C&M was the only Walgreen Co. pharmacy to operate on the CarePoint system and Walgreen Co. did not have access to that system; and (2) the "lack of significant change in refill numbers" after the auto-refill prohibition policy began "should have put [Walgreen Co.] on notice that C&M . . . was not in compliance" with the policy.

16

(Dkt. 115 ¶¶ 51, 56). Characterized by the State as Walgreen Co. keeping its "head in the sand," the State argues that such inaction constitutes recklessness. (*Id.* ¶ 53) Defendants counter that these allegations do not adequately establish reckless disregard by Walgreen Co. to C&M's prescription refill practices. (Dkt. 112 at 16–18.)

To prove "reckless disregard" under the FCA, a party must show that a defendant "had reason to know of facts that would lead a reasonable person to realize that she was causing the submission of a false claim[] or that [the defendant] failed to make a reasonable and prudent inquiry into that possibility." *United States v. King-Vassel*, 728 F.3d 707, 713 (7th Cir. 2013).

Under the heightened Rule 9(b) pleading standard, the SAJCI fails adequately to allege Walgreen Co.'s scienter. In particular, the State does not sufficiently connect C&M's continued use of the CarePoint system to culpability by Walgreen Co. for fraudulent activity. On the contrary, the SAJCI alleges only that Walgreen Co. "had no access to" C&M's CarePoint system and that "[t]he use of CarePoint at C&M allowed" Kulekowskis and Hayes to operate the alleged auto-refill scheme. (Dkt. 97 ¶¶ 51–52.) And "by permitting C&M to use CarePoint instead of Intercom Plus, [Walgreen Co.] was reckless in not knowing that each of these claims was false." (*Id.* ¶ 171.)

These allegations are insufficient to allege Walgreen Co.'s scienter with particularity. Allowing C&M to use the CarePoint system does not mean Walgreen Co. "had reason to know" doing so was causing the submission of a false claim. Nor does the State sufficiently allege that allowing C&M to use the system required a

17

reasonable and prudent inquiry by Walgreen Co. into such malfeasance. The State explains that the system the other Walgreen Co. pharmacies used, Intercom Plus, allowed Walgreen Co. to "view and monitor transactions for prescriptions", but C&M's CarePoint system did not. (*Id.* ¶ 15–16.) The State outlines no other differences between the systems, nor does it rule out any number of plausible explanations why a specialty pharmacy such as C&M might use a different system. The argument that Walgreen Co. recklessly disregarded Kulekowskis and Hayes's alleged fraud because C&M pharmacy operated a different computer system is therefore insufficient under Rule 9(b).

Nor does the second half of the State's argument fare any better. Although the State argues that Walgreen Co. was reckless in its disregard of Kulekowskis and Hayes's fraud because it should have noted the lack of decline in C&M's prescription fills following the auto-refill prohibition (*id.* ¶ 56), it fails to put these numbers into context. For example, the State does not explain how the refill numbers of other pharmacies changed after the prohibition, information that might explain why C&M's numbers were so anomalous as to put Walgreen Co. "on notice" of the fraud. Certainly it is not the case that Walgreen Co. should have expected precipitous declines in revenue following the implementation of the auto-refill prohibition—or, if that is the case, the State does not sufficiently allege it. C&M's use of CarePoint and its steady refill numbers are insufficient to establish reckless disregard on behalf of Walgreen Co.

In its response, the State raises another argument to establish knowledge:

Kulekowskis and Hayes's knowledge is imputed to Walgreen Co. (Dkt. 123 at 18.) But the State does not make this imputation allegation in the SAJCI; rather, the SAJCI relies only on the CarePoint and refill data to establish Walgreen Co.'s knowledge. Because of this omission, the Court will not consider Walgreen Co.'s knowledge by imputation.

Even if the SAJCI did rely on a theory of imputation, the theory remains insufficiently alleged. Knowledge obtained by corporate employees "acting within the scope of their employment is imputed to the corporation . . . . [And] acting within the scope of employment means with intent to benefit the employer." *United States v. One Parcel of Land*, 965 F.2d 311, 316 (7th Cir. 1992) (internal quotations omitted). But the SAJCI is silent as to whether Kulekowskis and Hayes intended for their alleged fraudulent scheme to benefit Walgreen Co.

Because the SAJCI does not allege a proper theory of FCA liability, Counts I through IV must dismissed. Even if the theory were viable, the State has failed to state a claim against Walgreen Co., because the SAJCI does not properly allege Walgreen Co.'s scienter as to the alleged fraud.

### C. Counts V through VII of the State's SAJCI

All remaining claims in the SAJCI arise under state law. As a general rule, when all federal-law claims are dismissed before trial, the pendent claims should be adjudicated in state court. *See Wright v. Associated Ins. Companies, Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994). In its previous dismissal order, the Court dismissed these state-law claims by declining to exercise supplemental jurisdiction over them. That

19

earlier decision remains sound, and the Court again declines to exercise supplemental jurisdiction over them. Counts V,[6] VI, and VII are accordingly dismissed.

## IV. CONCLUSION

Defendants' motion to dismiss (Dkt. 103) Relator's TAC is denied, and the motion to dismiss (Dkt. 111) the State's SAJCI is granted. Counts I–IV of the SAJCI are dismissed with prejudice.[7] Because the Court declines to exercise supplemental jurisdiction over the two remaining state-law claims, counts V, VI and VII are dismissed without prejudice.

SO ORDERED in No. 14-cv-01558.

Date: March 29, 2024

JOHN F. KNESS
United States District Judge

---

[6] Count V must also be dismissed for failure to state a claim. More specifically, Count V alleges common-law fraud, a backbone element of which is the making of a false statement. *See Bonhomme v. St. James*, 970 N.E.2d 1, 10 (Ill. 2012). Because the State's allegations do not plausibly suggest the existence a false statement made by Defendants, this claim fails.

[7] As the Court has now twice dismissed the State's case because its unamended theory of FCA liability is flawed, this dismissal is with prejudice.